HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSE RODRIGUEZ,<br><br>        Plaintiff,<br><br>   v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC. and ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>        Defendants. | CASE NO. C15-01224RAJ<br><br>ORDER DENYING ALLIANCEONE'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendant AllianceOne Receivables Management, Inc.'s ("AllianceOne"'s) motion to dismiss Plaintiff Jesse Rodriguez's ("Plaintiff"'s) complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. #9. For the reasons stated herein, the Court DENIES AllianceOne's motion.

## II. BACKGROUND

Around June of 2014, Plaintiff noticed four outstanding debts listed on his credit report. *See* Dkts. #1 at 3 and #12 at 8. This credit report was prepared by Experian Solutions, Inc. ("Experian"). Dkt. #1 at 3. Experian is a consumer reporting agency that issues consumer

reports. Dkt. #5 at 3. The four outstanding debts listed on Plaintiff's credit report were for parking violations allegedly incurred by Plaintiff; the creditor of the debts was listed as "Seattle," and the debts were listed as "ALLIANCE ONE RECEIVABLES." Dkt. #1 at 3. AllianceOne is a debt collection agency. *See* Dkt. #9 at 10 ("AllianceOne requested and used Plaintiff's consumer report in the course of collecting a debt[.]").

After noticing the outstanding parking violations, Plaintiff allegedly contacted Experian to dispute the appearance of these debts on his Experian credit report. Dkt. #1 at 3. Plaintiff alleges that he contacted Experian in June, October, and December of 2014, as well as March and April of 2015. *Id*. Despite Plaintiff's efforts, Experian did not remove the outstanding parking violations from his credit report. *Id*.

In May 2015, Plaintiff contacted AllianceOne to discuss the outstanding parking violations listed on his credit report. *Id*. at 4. During Plaintiff's phone call with AllianceOne, AllianceOne allegedly informed Plaintiff that it had asked Experian to remove the parking violation debts from Plaintiff's credit report. *Id*. at 4. Afterward, Plaintiff once again contacted Experian to request the removal of the outstanding parking violations from his credit report. *Id*. at 4. Notwithstanding Plaintiff's alleged efforts, the outstanding parking violation debts continued to appear on Plaintiff's Experian credit report. *Id*. at 4.

On May 27, 2015, because the outstanding parking violations continued to appear on his Experian credit report, Plaintiff submitted a complaint through the Consumer Financial Protection Bureau's ("CFPB"'s) website. *Id.* Plaintiff alleges that Experian responded to his CFPB complaint by stating that the four outstanding debts had been deleted from Plaintiff's credit report. *Id*. at 4-5. However, Plaintiff contends that the outstanding parking violations remained on his credit report. *Id.* at 5.

While Plaintiff disputed the appearance of the outstanding parking violations on his credit report, AllianceOne allegedly engaged in efforts to collect the outstanding parking violations. Dkts. #1 at 12 and #12 at 8-9. Plaintiff's Experian credit report indicates that AllianceOne requested a copy of Plaintiff's credit report on December 14, 2013 and April 3, 2014. Dkt. #1 at 12. Plaintiff alleges that Experian complied with AllianceOne's request, and AllianceOne then used Plaintiff's Experian credit report for the purpose of collecting the outstanding parking violations. *Id.*; Dkt. #9 at 10.

On August 4, 2015, Plaintiff filed suit against Experian and AllianceOne (collectively "Defendants"). *See* Dkt. #1. According to Plaintiff, Defendants' actions violate the Fair Credit Reporting Act ("FCRA"). *Id.* at 1. Experian's alleged FCRA violations stem from its alleged failure to ensure the accuracy of Plaintiff's credit report, as well as its alleged failure to investigate credit report inaccuracies after Plaintiff notified Experian of these alleged inaccuracies. *Id.* at 1-2, 8. Plaintiff alleges that AllianceOne violated the FCRA when it requested Plaintiff's Experian credit report for an impermissible purpose. *Id.* at 11-12. Plaintiff contends that it is not permissible for a third party to request an individual's credit report for the purpose of collecting a debt arising from a parking violation. *Id.* at 11.

### III. LEGAL STANDARD

To survive the contention that a complaint does not state a claim upon which relief can be granted a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility can be established if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If it appears "beyond doubt" that a plaintiff

cannot prove a set of facts that would entitle her to relief, the plaintiff's claim will be dismissed. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 782-83 (9th Cir. 1996).

On a motion to dismiss, the Court accepts all allegations of material fact as true, and construes those allegations in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required "to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

## IV.   DISCUSSION

**A.  Judicial Notice Requests**

As an initial matter the Court notes that both Plaintiff and AllianceOne have submitted unopposed requests for judicial notice to the Court. *See* Dkts. #10 and #13. Courts can take judicial notice of a fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "'Court filings and other matters of public record,'" may be judicially noted. *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014) (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)). However, when courts take judicial notice of a public record, they do so to note the existence of a document, "'not for the truth of the facts recited therein[.]'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

AllianceOne requests that the Court take judicial notice of a CFPB complaint submitted by Plaintiff. Dkt. #10 at 1. AllianceOne also asks the Court to take judicial notice of traffic

infraction print-outs from the Seattle Municipal Court. *Id*. at 2. Plaintiff asks the Court to take judicial notice of a petition for panel rehearing and rehearing *en banc*, as well as the response thereto, of the *Pintos v. Pacific Creditors Association*, 504 F.3d 792 (9th Cir. 2007), decision. Dkt. #13 at 1-2. Because Plaintiff and AllianceOne both request that the Court take judicial notice of matters of public record, the Court grants their respective requests for judicial notice.

**B. Collection of "Fully Adjudicated Debts" After the Enactment of FACTA**

The FCRA allows third parties to request, and credit reporting agencies to provide, a consumer's credit report for "'certain statutorily enumerated purposes.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2009) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001)). Section 1681b of the FCRA lists the circumstances under which consumer reporting agencies may furnish consumer credit reports. 15 U.S.C. § 1681b. Included in this section is the use of consumer reports for debt collection purposes, as long as the obligation owed by the consumer stems from a credit transaction involving the consumer. *Id*. § 1681b(a)(3)(A). If a credit reporting agency furnishes a credit report for an impermissible purpose, the FCRA creates "a private right of action allowing injured consumers to recover any 'actual damages' caused by negligent violations and both actual and punitive damages for willful noncompliance." *Andrews*, 534 U.S. at 23.

Plaintiff and AllianceOne disagree on whether a debt collection agency's effort to collect outstanding parking violations qualifies as a permissible purpose for the furnishing of consumer reports under section 1681b(a)(3)(A). *See* Dkts. #9 and #12. AllianceOne relies on *Pintos v. Pacific Creditors Association*, 606 F.3d 665 (9th Cir. 2009), to argue that section 1681b(a)(3)(A) is met whenever a judgment creditor attempts to collect a fully adjudicated debt. Dkt. #9 at 9-10. Given *Pintos*, AllianceOne argues that it is a judgment creditor whose request of Plaintiff's credit reports was permissible under section 1681b(a)(3)(A), because

outstanding parking violations are fully adjudicated debts. *Id*. Accordingly, AllianceOne argues that Plaintiff's complaint fails to state a claim for relief. *Id*. at 10.

Plaintiff counters by pointing out that the Fair and Accurate Credit Transactions Act of 2003's ("FACTA"'s) definition of "credit" undermines AllianceOne's reliance on *Pintos*. Dkt. #12 at 16-18. According to Plaintiff, the FACTA definition of "credit" limits the types of transactions that third parties can seek credit reports for. *Id*. Consequently, Plaintiff reasons, the definition of "credit" can preclude judgment creditors from obtaining consumer reports if those judgment creditors are attempting to collect on debt obligations that do not stem from "credit" transactions. *Id*. at 17-18. Plaintiff also argues that even if it is permissible to obtain credit reports with respect to *any* fully adjudicated debts, AllianceOne nonetheless violated the FCRA because Plaintiff's parking violations have not been fully adjudicated. *Id*. at 20-21.

The Court agrees that after FACTA's definition section went into effect in 2004, all fully adjudicated debts do not provide third parties with a permissible purpose for obtaining consumer reports. 16 C.F.R. § 602.1(c)(2)(i). Before FACTA, the FCRA did not define the term "credit." As a result, when deciding whether a third party has a permissible purpose for requesting a consumer's credit report, courts limited their section 1681b(a)(3)(A) analyses to determining (1) whether a credit transaction "involved" the consumer, and (2) whether the transaction involved the extension of credit to a consumer, the review of an account of a consumer, or the collection of an account of a consumer. *See, e.g.*, *Pintos*, 605 F.3d at 674. However, as the Ninth Circuit acknowledged in a later withdrawn version of *Pintos*, *Pintos v. Pacific Creditors Association*, 504 F.3d 792, 799-800 (9th Cir. 2007), ("*Pintos I*"), FACTA's "credit" definition "helped to clarify the specific circumstances in which credit reporting agencies may furnish credit reports to debt collectors under § 1681b(a)(3)(A)." The Court thus

agrees that third parties must not only establish that a transaction "involves" a consumer, they must also demonstrate that the transaction at issue is a "credit" transaction.

The Ninth Circuit's opinions in *Pintos* and *Hasbun v. County of Los Angeles*, 323 F.3d 801 (9th Cir. 2003), do not undermine the Court's reading of section 1681b(a)(3)(A). In *Pintos*, the Ninth Circuit considered whether a debt collection agency had a permissible purpose for seeking a consumer's credit report under section 1681b(a)(3)(A). 605 F.3d at 672. The outstanding obligation in *Pintos* arose in 2002, after the plaintiff's car was towed from a street in San Bruno, California. *Id*. at 673. After it was towed, the car in *Pintos* was impounded and a lien, for towing and impound costs, was eventually obtained by the towing company. *Id*. Because the *Pintos* plaintiff did not reclaim her car, the car was subsequently sold and the towing company asserted a deficiency claim against the plaintiff. *Id*. The plaintiff's deficiency claim was later transferred to a collection agency. *Id*. When the *Pintos* plaintiff discovered that the collection agency had requested, and obtained, her credit report, the plaintiff filed a complaint alleging violations of the FCRA. *Id*. Although the district court in *Pintos* had relied on the Ninth Circuit's decision in *Hasbun* to conclude that the collection agency's actions involved "the collection of an account," the Ninth Circuit reversed the district court's grant of summary judgment because the district court failed to consider whether the transaction at issue "involved" the plaintiff. *Id*. at 674.

After explaining why the *Pintos* plaintiff was not "involved" in the transaction that created the outstanding obligation, the Ninth Circuit explained why its decision in *Hasbun* did not preclude the plaintiff from bringing a claim. *Id*. at 676. *Hasbun*, the Ninth Circuit explained, established that "[if] a debt has been judicially established, there is a 'credit transaction involving the consumer' no matter how it arose. The obligation is established as a matter of law, and the [FCRA] is satisfied." 605 F.3d at 675. In stating this holding the Ninth Circuit explained: "We

explicitly adopted and quoted extensively from a Federal Trade Commission commentary which made repeated reference to the permissible purpose of a 'judgment creditor' to obtain a credit report." *Id*. at 676.  However, on July 26, 2011, the Federal Trade Comission ("FTC") issued a final rule rescinding the "judgment creditor" commentary on which the *Hasbun* court relied. Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 76 Fed. Reg. 44462 (July 26, 2011).  The FTC explained that FACTA resulted in "significant" changes to the FCRA, but refused to transfer its commentary to the CFPB because of its "staleness." *Id*. at 44463.

Given the FACTA definition of "credit," as well as the subsequent rescission of the FTC commentary on which *Hasbun* relied, the Court agrees that a defendant's status as a judgment creditor does not automatically indicate that a debt collection agency has a permissible purpose for obtaining consumer credit reports. *See Miller v. Trans Union LLC*, No. 06 C 2883, 2007 WL 641559 (N.D. Ill. Feb. 28, 2007) (finding that FTC commentary, as well as judicial opinions that relied on this commentary, "are no longer persuasive because they do not take into account the December 2003 amendments to the FCRA.").  Debt collection agencies must demonstrate that outstanding debts, in addition to "involving" consumers, stem from a "credit" transaction. *See* 15 U.S.C. § 1681b(a)(3)(A).

AllianceOne's attempts to undermine this reading of *Pintos* and *Hasbun* are not persuasive.  In *Pintos I*, the Ninth Circuit explained that after FACTA went into effect, its decision in *Hasbun*, as well as the Federal Trade Commission's nonbinding commentary (on which the *Hasbun* court relied), did not provide "insight" into the "post-FACTA" meaning of § 1681b(a)(3)(A). 504 F.3d at 799-800, n. 3, 4.  Thus, although the Ninth Circuit's *Pintos I* decision was later withdrawn, the Court notes that the Ninth Circuit nonetheless anticipated that FACTA's "credit" definition would alter the instances in which third parties can request

consumer credit reports. Additionally, as explained above, the Ninth Circuit's *Pintos* analysis focused on whether or not a particular transaction "involved" a consumer, the Court did not address whether the underlying obligation was indeed a "credit" transaction. 605 F.3d at 674**.** The lack of attention given to the term "credit" was understandable, given that the events giving rise to the dispute in *Pintos* occurred in 2002 – two years before the FACTA definition of "credit" went into effect. *Id*. at 673.

Here, Plaintiff claims that AllianceOne did not have a permissible purpose for obtaining his credit report because parking violations are not, as required by section 1681b(a)(3)(A), "credit" transactions, and they are not debts "involving the consumer." Dkts. #1 at 12 and #12 at 5. AllianceOne does not contend that the supporting facts contained in Plaintiff's complaint are insufficient to make this claim. *See* Dkt. #9. Consequently, AllianceOne's motion to dismiss is DENIED.[1]

## V. CONCLUSION

Having reviewed AllianceOne's motion, the response thereto and reply in support thereof, along with the remainder of the record, the Court hereby DENIES AllianceOne's Motion to Dismiss Pursuant to FRCP 12(b)(6) (Dkt. #9). AllianceOne has fourteen (14) days from the date of this order to answer Plaintiff's complaint.

DATED this 25th day of July, 2016.

The Honorable Richard A. Jones
United States District Judge

---

[1] Because the Court agrees that a defendant's status as a judgment creditor does not automatically indicate that a debt collection agency has a permissible purpose under section 1681b(a)(3)(A), the Court does not address whether AllianceOne is indeed a judgment creditor, or whether Plaintiff's outstanding parking violations are judicially established debts.